UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIAM DONNELL SAIN,

                Plaintiff,                Case No. 1:11-cv-63

v.                                         Honorable Janet T. Neff

PATRICIA CARUSO et al.,

                Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso, Martin, Hladki, Jones, El-Shamaa, Rencio, Snow, Burt, Komjathy, Harry, Whalen, Howes, Lange, Schwarz, Schad, Havan, and the three unknown Health Unit Managers from the Carson City Correctional Facility, the Saginaw Correctional Facility, and Southern Michigan Correctional Facility. The Court also will dismiss Defendant Bureau of Health

Care Services because it is immune. The Court will serve the complaint against Defendants Correctional Medical Services, Inc., Prison Health Services, Inc., Hubbell, LaNora, Abdellatif, and Ingraham.

**Discussion**

I.  Factual allegations

Plaintiff William Donnell Sain presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF), though the actions about which he complains also occurred while he was housed at the Carson City Correctional Facility (DRF), the Saginaw Correctional Facility (SRF), the St. Louis Correctional Facility (SLF), the Southern Michigan Correctional Facility (JMF), and the Muskegon Correctional Facility (MCF). Plaintiff sues the following Defendants: MDOC Director Patricia Caruso; MDOC Health Care Quality Assurance Administrator Angela Martin; Regional Medical Administrator Barbara Hladki; Correctional Medical Services, Inc. (CMS); Prison Health Services, Inc. (PHS); DRF Warden Kurt Jones; the unknown DRF Health Unit Manager (HUM); DRF Doctor (unknown) El-Shamaa; SLF Warden Paul Rencio; the unknown SLF HUM; SLF Doctor (unknown) Snow; JMF Warden Sherry Burt; the unknown JMF HUM; JMF Dr. (unknown) Komjathy; MCF Warden Shirlee Harry; MCF Health Unit Manager Michael Whalen; MCF Nurse M. Hubbell; MCF Doctors Thomas LaNora and (unknown) Abdellatif; LCF Warden Carol Howes; LCF HUM Nancy Lange; LCF Nurse Diane Schwarz; LCF Nurse Practitioner Raymond Ingraham; LCF Region 2 Risk Management Coordinator J. Schad; MDOC Step III Grievance Respondent Duncan P. Havan; and the MDOC Bureau of Health Care Services.

Plaintiff complains that, in August 2000, he sustained two identical injuries to his head and neck while playing basketball at SRF. Shortly thereafter, Plaintiff began to experience sharp headaches and neck pain and he submitted requests for medical treatment. Medical personnel SRF determined that Plaintiff had no serious problem and refused his request for a CT scan or MRI.

Plaintiff was transferred to DRF in 2001. Plaintiff again informed DRF medical service providers about his past injury. He told them that his headaches were increasingly frequent and always began in his neck and the base of his skull. DRF medical personnel diagnosed migraines, and they tried a series of medications to treat the headaches, including Inderal, Verapamil, and Depakote. All three drugs caused Plaintiff to experience serious side effects. Plaintiff claims that DRF Dr. El-Shamaa was negligent in prescribing and monitoring the drugs. Plaintiff submitted a grievance to the unknown Defendant DRF HUM, alleging the denial of proper medical treatment. Defendant subsequently denied the grievance. A copy of the complaint was sent to Defendant Warden Jones and Defendant Bureau of Health Care Services, neither of whom responded.

Plaintiff was transferred to SLF in 2002. Plaintiff alleges that he complained to SLF medical personnel, Warden Rencio and the Bureau of Health Care Services about the lack of proper treatment for his headaches over the preceding two years. He saw Defendant Dr. Snow on August 3, 2002. Plaintiff attempted to explain about how his headaches were becoming more severe and frequent and that his migraine medication did not always work. Plaintiff again requested a referral to a specialist and a CT scan or MRI. Snow allegedly told Plaintiff that a referral to a specialist would be futile, as the specialist would only suggest a medication that Plaintiff already had tried without success. Snow also told Plaintiff that the MDOC would not authorize any sort of operation,

due to budget cuts. Plaintiff filed a grievance that was denied at Step I by the SLF HUM. Plaintiff received no response at Step II from Defendant Rencio.

Plaintiff was transferred to JMF in 2004 or 2005. Plaintiff again complained about his prior injury and the pain and numbness he was experiencing in his shoulders, upper back, arms and hands. He complained of the same headache continuing for nine months, since May 2006. He again asked to see a specialist and to have an MRI or CT scan. Neither Defendant Dr. Komjathy nor the physician's assistant would make the referral. Finally, on June 6, 2007, Dr. Kalunda, who is not a Defendant in the action, made a recommendation for referral to a neurologist. CMS, however, failed to respond to or approve the request. Plaintiff was transferred to MCF on October 17, 2007 without having seen the neurologist.

Shortly after he arrived at MCF, Plaintiff saw Dr. Hawkins, who is not a Defendant in the action. Hawkins told Plaintiff she would call him back to medical to discuss his neck problem. However, shortly thereafter, Hawkins stopped working at the facility. Plaintiff sent medical kites to health services, asking about his referral to a neurologist. He was told that medical staff would investigate. On August 7, 2008, Plaintiff was seen by Defendant Dr. Abdellatif. Plaintiff began explaining his neck and head injuries and his pain. Abdellatif changed the subject and asked about Plaintiff's blood pressure. Plaintiff explained that he had been referred to a neurologist by a doctor at JMF, who believed Plaintiff was not experiencing migraines, but instead had another problem. Plaintiff also explained that he had a very bad headache at the time that had been ongoing for ten days. Abdellatif did not physically examine Plaintiff and told Plaintiff that he did not believe Plaintiff's complaints. Abdellatif also canceled the neurology referral. Plaintiff filed a grievance that was denied at Step I by Defendant Nurse M. Hubbell and HUM Whalen. Defendant

Warden Harry denied the grievance at Step II. In his Step III grievance, Plaintiff advised the reviewer that, on February 6, 2009, after he filed his Step-II grievance, Plaintiff was informed by Dr. Graeser that he had broken his neck and that the second, fifth, sixth and seventh vertebrae were pushed forward, causing Plaintiff headaches and creating a risk of paralysis from sudden movement or pressure. According to Plaintiff, Dr. Graeser issued a medical detail for Plaintiff to have extra pillows to relieve the strain on his neck at night, and he ordered a cervical collar to relieve pressure during the day. The Step III respondent nonetheless affirmed the decisions at Steps I and II.

When the cervical collar ordered by Dr. Graeser arrived at MCF, it was too small. A second collar was issued that was smaller still. Plaintiff filed another grievance, which was again rejected by Hubbell. On April 15, 2009, Plaintiff wrote to Defendant Martin, the Health Quality Assurance Administrator. Martin responded on April 20, 2009 that Plaintiff's complaint would be investigated, but that he should use the health care request forms to seek assistance from his own facility. Plaintiff heard nothing further from Martin. Plaintiff sent another medical kite asking about the cervical collar. On June 23, 2009, Plaintiff received a response from Defendant Hubbell, stating, "the cervical collar has been reviewed. The collar is not medically indicated." (Compl., Page ID#23.) Plaintiff subsequently was seen by Defendant Dr. LaNora, who told Plaintiff that he did not believe Plaintiff was having headaches for as long as he claimed. Plaintiff did not receive a referral, an MRI or a CT scan.

Plaintiff was transferred to LCF on January 8, 2010. Plaintiff saw Dr. Elizabeth Miller, who is not a Defendant in this action. Miller said that she would request a TENS Unit for Plaintiff's back and neck and would also request a CT scan. When Plaintiff saw Dr. Miller again on April 27, 2010, he explained his extreme pain and described having his arms give out on him on

several occasions. Miller physically examined Plaintiff. While manipulating Plaintiff's neck, Miller stated, "[O]h, wow, that['s] not right . . . I'm going to put in a request to get an MRI done instead of the CT scan because there is something wrong there. My finger pressed in where it should not have, besides, the MRI is a lot more accurate that the CT." (Compl., Page ID##24-25.) Plaintiff saw Defendant Nurse Practitioner Ingraham on June 10, 2010, who informed Plaintiff that another doctor in Lansing had denied Dr. Miller's request for an MRI and explained that many medical requests were being denied because of the budget. Ingraham told Plaintiff that he could do nothing for Plaintiff's pain. Plaintiff filed a grievance, which was denied on June 23, 2010 by Defendant Nurse Schwarz and Defendant HUM Lange. Plaintiff's Step II appeal was denied by Defendant Region 2 Risk Management Coordinator J. Schad on July 12, 2010. Plaintiff's Step III appeal was denied by Defendant Havan, based on the responses of the Bureau of Health Care Services.

Plaintiff alleges that Defendants have deprived him of his Eighth Amendment rights by refusing to adequately treat his serious medical needs. He seeks compensatory and punitive damages, together with injunctive relief.

II. Sovereign Immunity

Plaintiff names the Bureau of Health Care Services, a division of the MDOC, as a Defendant in the action. Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh

Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Board of Regents*, 535 U.S. 613, 618 (2002) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989)). Therefore, the Court dismisses the Bureau of Health Care Services, a division of the MDOC.

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is "to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. DRF, SLF and JMF Defendants

Plaintiff's allegations span the time between 2000 and the present, while Plaintiff was housed at five different facilities. All of Plaintiff's allegations about his medical treatment at DRF, SLF and JMF occurred prior to October 17, 2007, when Plaintiff was transferred to MCF. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985) (Superseded by statute on other grounds). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).

Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiff's complaint against the DRF, SLF and JMF Defendants is untimely. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, all of his claims against these Defendants accrued before October 2007. Plaintiff, however, did not file his complaint until January 18, 2011, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

The Sixth Circuit repeatedly has held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510-11 (6th Cir. 2001); *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325,

---

[1]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statute enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

2000 WL 1828653, at *1 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's action against Defendants Jones, El-Shamaa, Rencio, Snow, Burt, Komjathy, and the three unknown Health Unit Managers from DRF, SLF and JMF will be dismissed for failure to state a claim because they are time-barred.

### B. Supervisory Liability

Plaintiff's allegations against Defendants Caruso, Martin, Hladki, Harry, Whalen, Howes, Lange, Schwarz, Schad, and Haven are limited to claims that they negligently supervised their subordinates and/or improperly denied his grievances. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior" or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). "The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act." *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004); *Grinter*, 532 F.3d at 575-76; *Greene*, 310 F.3d at 899. Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendants Caruso, Martin, Hladki, Harry, Whalen, Howes, Lange, Schwarz, Schad, and Haven engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

### C. Remaining Defendants

Upon review, the Court concludes that Plaintiff has adequately stated a claim against remaining Defendants CMS, PHS, Hubbell, LaNora, Abdellatif, and Ingraham. Accordingly, the Court will order service of the complaint against these Defendants.

### **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, Martin, Hladki, Jones, El-Shamaa, Rencio, Snow, Burt, Komjathy, Harry, Whalen, Howes, Lange, Schwarz, Schad, Havan, the three unknown Health Unit Managers from DRF, SLF and JMF and the Bureau of Health Care Services will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) because Plaintiff fails to state a claim against them or they are immune. The Court will serve the complaint against Defendants CMS, PHS, Hubbell, LaNora, Abdellatif, and Ingraham.

An Order consistent with this Opinion will be entered.


Dated: __April 15, 2011__     /s/ Janet T. Neff
                              Janet T. Neff
                              United States District Judge