UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM SAIN,

       Plaintiff,                              Hon. Janet T. Neff

v.                                                  Case No. 1:11 CV 63

PATRICIA CARUSO, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Correctional Medical Services, Inc.'s Motion to Dismiss, (dkt. #18); Defendant Prison Health Services, Inc., Raymond Ingraham, and Thomas Lanore's Motion to Dismiss, (dkt. #22); Defendant Abdellatif's Motion for Summary Judgment, (dkt. #29); and Defendant Hubbell's Motion for Summary Judgment, (dkt. #38). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions all be **granted** and this action **terminated**.

## BACKGROUND

Plaintiff initiated this action on January 18, 2011, against numerous individuals and entities alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment. The majority of Plaintiff's claims were dismissed by the Honorable Janet T. Neff on April 15, 2011. Plaintiff's claims against the following Defendants were, however, permitted to go forward: (1) Correctional Medical Services; (2) Prison Health Services; (3) Mary Hubbell; (4) Thomas Lanore; (5)

Badawi Abdellatif; and (6) Raymond Ingraham. With respect to the remaining defendants, the following allegations are contained in Plaintiff's complaint. (Dkt. #1).

Plaintiff has been incarcerated with the Michigan Department of Corrections since 1990. In August 2000, while housed at the Saginaw Correctional Facility (SRF), Plaintiff injured his head and neck while playing basketball. Plaintiff subsequently began experiencing headaches and neck pain. Despite "repeated complaints" to medical staff, Plaintiff was never scheduled for an MRI or CT scan. Plaintiff was subsequently transferred to the Carson City Correctional Facility (DRF) after which he reported to medical personnel that he was experiencing "more frequent and severe" headaches. Medical personnel began treating Plaintiff with various medications which caused him to experience various side effects.

Plaintiff was later transferred to the St. Louis Correctional Facility (SLF) where he likewise sought medical treatment for his head and neck pain. Plaintiff's requests to undergo an MRI or CT scan or to be examined by a specialist were denied. Plaintiff was subsequently transferred to the Southern Michigan Correctional Facility (JMF). Plaintiff reported to medical personnel that he was experiencing head and neck pain, as well as pain and numbness in his upper extremities. Plaintiff's requests to undergo an MRI or CT scan or to be examined by a specialist were, however, denied.

On August 7, 2008, Plaintiff was examined by Defendant Abdellatif. Plaintiff reported that he was experiencing headaches and neck pain. The doctor did not conduct a physical examination, but instead told Plaintiff "it don't look like you have a headache to me." The doctor offered Plaintiff Tylenol. Plaintiff filed a grievance against Dr. Abdellatif following this encounter. On August 29, 2008, Defendant Hubbell interviewed Plaintiff as part of her investigation of Plaintiff's grievance. Plaintiff

was later scheduled for a "neurology referral" which was subsequently cancelled. Plaintiff asserts that Defendant Abdellatif "had to have been" the person who cancelled this referral.

In November 2008, Plaintiff was examined by Dr. Graeser who informed Plaintiff that he "must have broken his neck" and that "his 2nd, 5th, 6th and 7th vertebra is pushed forward." The doctor also told Plaintiff that "he was still in danger of being paralyzed from any sudden jerking of his head or pressure to his neck." The doctor authorized Plaintiff to have "additional pillows" and also ordered a cervical collar for Plaintiff to wear. The cervical collar which Plaintiff received, however, was too small for him to wear.

On or about April 7, 2009, Plaintiff filed a grievance alleging that he was not receiving appropriate medical care. On April 14, 2009, Defendant Hubbell interviewed Plaintiff regarding his grievance. On June 16, 2009, Plaintiff submitted a kite requesting another cervical collar. On June 23, 2009, Plaintiff's kite was denied by Defendant Hubbell on the ground that "the collar is not medically indicated."

On April 27, 2010, Plaintiff was examined by Dr. Elizabeth Miller. Plaintiff reported that he was experiencing "real bad pain" in his back that radiated into his lower extremities. Plaintiff also reported that recently his arms "just gave out on him" when he was doing pushups. After examining Plaintiff's neck, the doctor concluded that "there is something wrong there." Dr. Miller informed Plaintiff that she would submit a request for him to undergo an MRI examination. On June 10, 2010, Plaintiff was examined by Defendant Ingraham. When Plaintiff asked about the status of "the MRI request," Ingraham informed Plaintiff that the request "was denied by another doctor in Lansing."

Plaintiff asserts that he "has tried repeatedly to have an MRI or CT scan done. . .in order to determine the extent of [his] injury and the appropriate course of treatment[,] but that no one. . .has

acted or responded appropriately." Plaintiff further asserts that as a result of his injury, he is no longer able to "play any sports [or] lift weights." Plaintiff has since been prescribed Excedrin Migraine tablets which "doesn't get rid of the headaches but merely 'knocks an edge off' which allows him to deal with the pain."

Plaintiff alleges that Defendants Hubbell, Lanore, Abdellatif, and Ingraham violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff further alleges that Defendants Correctional Medical Services (CMS) and Prison Health Services (PHS) are liable for the "acts and omissions" of those in its employ. Defendants CMS, PHS, Hubbell, Lanore, Abdellatif, and Ingraham now move for the dismissal of Plaintiff's claims and/or for summary judgment.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

As the Supreme Court recently stated, a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Defendants CMS and PHS**

In his complaint, Plaintiff asserts that Defendants CMS and PHS are liable for the "acts and omissions" of those in their employ. (Dkt. #1 at ¶¶ 25-26). To the contrary, neither CMS nor PHS can be held vicariously liable for the actions of their employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS or PHS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS or PHS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff has submitted no evidence that would entitle him to prevail on his claims against CMS and PHS. Accordingly, the undersigned recommends that Defendants CMS and PHS are both entitled to summary judgment.

## II.        Defendant Abdellatif

As discussed above, Plaintiff asserts that he was examined by Dr. Abdellatif on August 7, 2008. (Dkt. #1 at ¶ 16). Plaintiff alleges that despite reporting that he was experiencing headaches and neck pain, Dr. Abdellatif did not conduct a physical examination and instead merely offered him Tylenol. (Dkt. #1 at ¶ 16). Plaintiff also theorizes that Dr. Abdellatif was the person who cancelled a neurology referral for which he was scheduled. (Dkt. #1 at ¶ 18). Plaintiff asserts that Defendant Abdellatif's actions violated his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*

*v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff must establish that the defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

The medical evidence submitted by Plaintiff refutes his allegations of extreme and debilitating injury. X-rays of Plaintiff's cervical spine, taken on November 19, 2008, revealed "arthritic

changes," but "no evidence of fracture or acute osseous abnormalities." (Dkt. #21). Treatment notes dated February 6, 2009, reveal that Plaintiff was merely experiencing muscle tension headaches. Plaintiff was instructed in the performance of "counter strain exercises" and was also offered Flexeril,[1] which he declined. Treatment notes dated April 27, 2010, reveal that a physical examination of Plaintiff was unremarkable and, moreover, that recent x-rays of Plaintiff cervical spine indicated only degenerative changes. *Id.*

While the evidence indicates that Plaintiff has greatly exaggerated the nature and extent of his medical condition, the Court finds that there nevertheless exists a factual dispute as to whether Plaintiff was, as of August 7, 2008, suffering a medical condition sufficient to implicate the Eighth Amendment. As Plaintiff details in his verified complaint, his head and neck symptoms were for a prolonged period of time prior to his examination by Dr. Abdellatif treated with various medications. The evidence subsequent to Plaintiff's August 7, 2008 encounter with Defendant Abdellatif likewise reveals that Plaintiff received some measure of treatment for his head and neck symptoms. In sum, Plaintiff's condition, while relatively minor, was treated by medical professionals for a lengthy period of time precluding a finding for Defendant on the objective component of the analysis.

With respect to the subjective element of the analysis, however, the Court reaches a different conclusion. There is no dispute that Dr. Abdellatif examined Plaintiff on August 7, 2008. Plaintiff concedes this and the evidence (e.g., treatment notes and affidavit) submitted by Dr. Abdellatif confirm such. While Plaintiff may believe that the doctor's examination was incomplete or somehow deficient, such merely states a claim for negligence or malpractice which does not implicate the Eighth

---

[1] Flexeril is a muscle relaxant prescribed to treat "skeletal muscle conditions." *See* Flexeril, available at http://www.drugs.com/flexeril.html (last visited on October 31, 2011).

Amendment. In light of the evidence indicating that Plaintiff was experiencing a relatively minor malady at the time, Defendant Abdellatif's actions were reasonable under the circumstances and, therefore, do not run afoul of the Eighth Amendment. Thus, the undersigned recommends that Defendant Abdellatif is entitled to summary judgment as to Plaintiff's claim regarding his August 7, 2008 examination by Dr. Abdellatif.

As for Plaintiff's supposition that Defendant Abdellatif "had to have been" the person who cancelled his "neurology referral," Plaintiff offers no evidence to support such. On the other hand, Defendant Abdellatif asserts in his affidavit that he "did not cancel any pending neurology consultations or any other appointments that [Plaintiff] may have had." This evidence is unrefuted. Accordingly, the undersigned recommends that Defendant Abdellatif is entitled to summary judgment as to this claim.

**III.       Defendant Lanore and Defendant Ingraham**

The only allegation in Plaintiff's complaint against Defendant Lanore is that Lanore "refused to render proper and adequate medical treatment and was flagrantly indifferent to plaintiff's serious medical needs when [Lanore] told Plaintiff that, 'you can't be having them many headaches for that long.'" (Dkt. #1 at ¶ 32). The only allegation in Plaintiff's complaint against Defendant Ingraham is that when Plaintiff asked Ingraham about the status of Dr. Miller's request for Plaintiff to undergo an MRI, Defendant Ingraham informed Plaintiff that the request had been denied "by another doctor in Lansing." (Dkt. #1 at ¶ 33). According to Plaintiff, Defendant Ingraham added that "[t]hey are denying a lot of medical stuff because of the budget." *Id.*

As noted above, merely stating a legal conclusion, as Plaintiff has done, does not prevent dismissal under Federal Rule of Civil Procedure 12(b)(6). To prevent dismissal under Rule 12(b)(6),

Plaintiff must allege *facts* which, if proven, would entitle him to relief. Plaintiff has failed to make any factual allegations against Defendant Lanore or Defendant Ingraham that, even if accepted as true, would entitle him to relief in this matter. The undersigned recommends, therefore, that Plaintiff's claims against Defendant Lanore and Defendant Ingraham be dismissed for failure to state a claim on which relief may be granted.

**IV.        Defendant Hubbell**

In his complaint, Plaintiff asserts three allegations against Defendant Hubbell. Plaintiff asserts that on August 29, 2008, he was interviewed by Defendant Hubbell as part of the investigation into a grievance that Plaintiff filed. (Dkt. #1 at ¶ 32). Plaintiff asserts that he was again interviewed by Defendant Hubbell on April 14, 2009, regarding another grievance he filed. (Dkt. #1 at ¶ 32). Finally, Plaintiff alleges that on June 23, 2009, Defendant Hubbell denied his request for a cervical collar on the ground that "the collar is not medically indicated." (Dkt. #1 at ¶ 32).

As for Plaintiff's claims concerning Defendant Hubbell's involvement in the grievance resolution process, Defendant Hubbell is entitled to summary judgment. Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be

imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").

With respect to Plaintiff's claim that Defendant Hubbell denied his request for a cervical collar, the result is the same. As discussed above, Plaintiff's claims of extreme injury and impairment are greatly exaggerated and are not supported by the evidence. The evidence submitted by Plaintiff reveals that he was merely experiencing tension headaches. There is no evidence that a doctor or other medical professional directed Defendant Hubbell to provide Plaintiff with a cervical collar. There is likewise no evidence that as of June 23, 2009, Plaintiff was experiencing a condition which Defendant Hubbell knew or should have known necessitated that Plaintiff wear a cervical collar. In sum, Defendant Hubbell, in the exercise of her medical judgment, concluded that Plaintiff did not require a cervical collar. This conclusion is eminently reasonable and, as discussed above, at most supports a claim for negligence or malpractice, neither of which implicates the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Hubbell is entitled to summary judgment as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Correctional Medical Services, Inc.'s Motion to Dismiss, (dkt. #18), be **granted**; Defendant Prison Health Services, Inc., Raymond Ingraham, and Thomas Lanore's Motion to Dismiss, (dkt. #22), be **granted**; Defendant Abdellatif's Motion for Summary Judgment, (dkt. #29), be **granted**; Defendant Hubbell's Motion for Summary Judgment, (dkt. #38), be **granted**; and this action **terminated**. The

undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  December 2, 2011

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge